UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN K. REED,

                              Petitioner,

        -v-

RBMS REO HOLDINGS, LLC,

                              Respondent.

CIVIL ACTION NO.: 20 Civ. 5891 (GBD) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE GEORGE B. DANIELS**, United States District Judge:

## I. INTRODUCTION

Pro se Petitioner John K. Reed filed a petition (the "Petition") seeking to enforce an arbitration award (the "Award") against Respondent RMBS REO Holdings, LLC ("RMBS").[1]  (ECF No. 1).  Reed alleges that unanswered mailings to RMBS created a contract to arbitrate and that RMBS failed to oppose arbitration or defend itself at an arbitration hearing, following which an arbitration panel issued the Award of $3.8 million dollars—$15.2 million with treble damages— against RMBS.  (See id.)

RMBS moved to dismiss the Petition under Federal Rule of Civil Procedure 12(b)(6) and to vacate the Award (the "Motion").  (ECF No. 18).  Reed opposed the Motion (the "Opposition"). (ECF Nos. 29, 31, 33).

For the reasons set forth below, the Court respectfully recommends that the Motion be GRANTED IN PART AND DENIED IN PART as follows:

---

[1] Reed erroneously named RMBS in this action as "RBMS REO Holdings, LLC."  (See ECF Nos. 1, 19 at 1).

(1) the Petition be DISMISSED WITH PREJUDICE; and

(2) RMBS's request to vacate the Petition be DENIED as untimely.

In addition, because Reed has not demonstrated that he could remedy the defects in the Petition, I respectfully recommend that leave to amend be DENIED.

## II. BACKGROUND

### A.  Factual Background

The Petition appears to be the sixth in a series of legal actions in which Reed has sought to challenge foreclosure on a mortgage secured by Reed's real property located in Santa Barbara, California (the "Property").  The Court summarizes only the background necessary for analyzing the Motion.

RMBS alleges that it is the current beneficiary of a deed of trust concerning the Property (the "Deed of Trust"), which it holds pursuant to an Assignment of Deed of Trust recorded April 11, 2019, that assigned to RMBS "all interest under [the] Deed of Trust . . . in the amount of $999,990.00 executed by JOHN K REED . . . Property Address: 1611 Olive St., Santa Barbara, CA, 93101[.]"  ((ECF No. 19-19); see ECF No. 19 at 5).  Reed disputes the authenticity of the Deed of Trust and argues that RMBS is fraudulently attempting to foreclose on the Property.  (See ECF No. 29 at 2, 9).  There have been five prior actions in which Reed unsuccessfully attempted to cancel the Deed of Trust.  Reed v. Ohio Savings Bank, 2:19-cv-03019 (PSG) (MRW), No. 2019 WL 6608761, at *1–3 (C.D. Cal. July 9, 2019) ("Reed V") (dismissing Reed's complaint with prejudice and summarizing prior history).[2]

---

[2] The actions are: (i) Reed v. Ohio Savings Bank, No. 16-1965 (PSG) (MRW) (C.D. Cal.) ("Reed I"), which was voluntarily dismissed with prejudice; (ii) Reed v. Ohio Savings Bank, No. CV 16-6610 (PSG) (JEM) (C.D. Cal.) ("Reed II"), which was dismissed with prejudice as the court found Reed's claims to be barred by judicial

Reed asserts that RMBS was subject to binding arbitration and defaulted by failing to appear at a properly noticed arbitration hearing.  (See ECF No. 1).  He attaches to the Petition: (i) a "Final Arbitration Award" dated December 3, 2019 (the "First Award"); (ii) a "Final Modified Arbitration Award" dated February 6, 2020 (the "Modified Award," together with the First Award, the "Award"); (iii) a two-and-one-half page transcript (the "Transcript") of a December 2, 2019 arbitration hearing (the "Hearing") before "Dalwickman Arbitration Services" ("Dalwickman"); (iv) a USPS tracking record dated December 12, 2019, indicating a Manhattan delivery, signed by "R Rob"; (v) an undated "Final Notice of Default Notice to Respond" from Reed to RMBS (the "Final Notice");[3] (vi) certified mail receipts to RMBS, one dated October 25, 2019, and a second with an illegible date; (vii) an "Arbitrators' Disclosure" dated December 2, 2019; and (viii) a November 19, 2019 "Notice of Arbitration Hearing" setting the Hearing for December 11, 2019 (the "Hearing Notice").  (Id. at 12–48).   Not attached to the Petition is any agreement, contract, or other document between himself and RMBS containing an agreement to arbitrate.  (See id. at 1–51).  Reed also references in the Petition an October 21, 2019 "Show Cause Proof of Claim

---

estoppel, "because [Reed's] suit to cancel the Deed of Trust was clearly inconsistent with the position he took in a prior bankruptcy proceeding, where he asked the bankruptcy court to void a junior lien on his home because of the existence of the Deed of Trust."; (iii) Reed v. Ohio Savings Bank, No. CV 17-6637 (PSG) (MRW) ("Reed III"), which was dismissed for lack of prosecution; (iv) Reed v. Ohio Savings Bank, No. CV 18-9771 (PSG) (MRW) ("Reed IV"), which was dismissed with prejudice after Reed neither opposed a motion to dismiss nor responded to the court's order to show cause; and (v) Reed V, which was dismissed with prejudice. 2019 WL 6608761, at *2–6.

[3] The Final Notice states, in part, "You are a party to the contract initiated by your confirmed receipt . . . via USPS Priority Mail delivered on October 25, 2019 . . . You have not complied with the terms of the contract or disputed its confirmation.  You have 72 hours to provide proof that you did not receive the original notification, or that document['s] terms and conditions shall be deemed to be in full effect . . ." (ECF No. 1 at 40).

Demand" (the "Demand Letter") and a "Notice of Dishonor and Opportunity to Cure" dated November 4, 2019, neither of which is attached to the Petition. (See id. at 7).

Although the Hearing Notice set the date of the Hearing as December 11, 2019, according to the Transcript, the Hearing took place on December 2, 2019 on Skype, hosted by Dalwickman before Anthony O'Quinn, Elliot Manning, and Debra Lohri (the "Panel"). (ECF No. 1 at 13, 23). Reed appeared at the Hearing pro se and RMBS did not appear. (Id. at 23). When asked, "[d]oes the contract submitted to this panel for arbitration contain arbitration clauses?", Reed responded, "Yes." (Id.) Manning asked, "have you received a response from [RMBS] from the mailing of the contract?", to which Reed replied he had not. (Id.) Reed testified that the "contract submitted for arbitration" required a response from RMBS within a specified time frame, which had expired, and that he did not receive from RMBS a response to a "Request for Arbitration" or the Hearing Notice. (Id. at 23–25).

On December 3, 2019, the Panel issued the First Award awarding Reed $3.8 million and directing payment of an additional $11.4 million as "punitive treble damages" if RMBS failed to comply within 30 days. (ECF No. 1 at 34). In the First Award, the Panel determined that Reed and RMBS "entered into an agreement dated October 21, 2019 [] whereby they knowingly and intentionally [] agreed to [a]rbitration to settle all disputes," and that this was "a written, self-executing, binding, irrevocable, contractual agreement" permitting arbitration at Dalwickman. (Id. at 30–32).

On February 6, 2020, Dalwickman issued the Modified Award. (ECF No. 1 at 15). The Modified Award, issued "[u]pon request of [] Reed . . . to clarify the [First] Award[,]" purports to be "binding on all the parties, in all jurisdictions, and shall take precedent over all collateral

and/or related matters heretofore, at present and forthwith until the agreement is fully satisfied." (Id.)

Reed alleges that the Award required RMBS "to release any and all claims against 'any and all properties [belonging to] Reed[.]'" (ECF No. 1 at 3). Reed alleges that he served the Award on RMBS "at its New York Offices," and has submitted tracking receipts for a delivery signed for by "R Rob" on December 12, 2019. (Id. at 4, 7, 37).

**B. Procedural Background**

On July 23, 2020, Reed filed the Petition. (ECF No. 1). Reed bases venue in this District on RMBS's presence in Manhattan. (Id. at 4–5). Reed asks the Court to affirm a default judgment against RMBS in the amount of $15.2 million dollars, consisting of the $3.8 million Award, plus $11.4 million in "punitive treble damages." (Id. at 2–3, 9).

On August 5, 2020, the Honorable George B. Daniels issued an Order of Service directing Reed to serve RMBS within 90 days and warned that his failure to comply could lead to the dismissal of the Petition for failure to prosecute. (ECF No. 5). The same day, Judge Daniels referred this action to the undersigned for general pretrial supervision and to issue a Report and Recommendation on any dispositive motions. (ECF No. 6).

On September 24, 2020, the Court issued an Order to Show Cause directing Reed to show cause why this action should not be dismissed for failure to prosecute under Federal Rules of Civil Procedure Rule 4(m) and 41(b). (ECF No. 12). On October 1, 2020, Reed filed an affirmation stating that he engaged a process server in his state of residence, California, who purported to serve RMBS by certified mail on August 3, 2020. (ECF No. 13 at 2–3). The Court "acknowledge[d] [Reed's] attempt to effect service[]" but explained that service of a New York corporation by mail

was "invalid." (ECF No. 14 (citing Fed. R. Civ. P. 4(h)(1)). In light of Reed's pro se status, the Court extended his deadline to serve RMBS to December 21, 2020. (Id.)

On August 31, 2020, Reed filed a "Request for Payment of Compounding Interest and Recovery of Costs and Expenses Regarding Default Judgment Pertaining to Arbitration Award" (the "Request" (ECF No. 9)). In the Request, Reed "appeared to be seeking to recover the expenses he incurred leading up to the filing of this action, as well as the full amount of the [] Award as described in his Petition and annualized compounding interest." (ECF No. 17 at 1 (citing ECF No. 9 at 2–5)). On November 25, 2020, RMBS filed a motion to dismiss and vacate the Award (the "First Motion"). (ECF No. 16). In an order dated December 7, 2020, the Court deemed the Request "to be seeking the same relief as the Petition, that is, to enforce the [] Award, and to supplement the amount of damages he is claiming[,]" and therefore denied the Request without prejudice in light of the pendency of the First Motion. (ECF No. 17 at 2). On January 14, 2021,[4] RMBS filed the Motion and a certification of service on Reed by first class mail. (ECF Nos. 18–20).

After some delay, on May 25, 2021, Reed filed his Opposition to the Motion.[5] (ECF No. 29). On May 28, 2021, RMBS filed its Reply. (ECF No. 30). Reed filed a sur-reply, dated June 2, 2021, with the assistance of the Southern District's Legal Clinic for Pro Se Litigants. (ECF No. 31 (the "First Sur-Reply")). RMBS opposed the First Sur-Reply as impermissibly filed, and responded

---

[4] The First Motion was terminated on the electronic case filing system for a "deficient docket entry error." (ECF Minute Entry Jan. 13, 2021).
[5] Reed requested an extension on the ground that he "never received a copy" of the Motion, a claim that RMBS disputed, citing numerous reasons why it had "grave doubts" about [Reed's] representation. (ECF No. 25 (citing ECF Nos. 23–24)).

to Reed's arguments. (ECF No. 32). Reed filed a second sur-reply, dated June 14, 2021. (ECF No. 33 (the "Second Sur-Reply")).[6]

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Blackson v. City of New York, No. 14 Civ. 452 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014). "[T]he Court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Blackson, 2014 WL 6772256, at *2 (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Myers v. City of New York, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *2 (S.D.N.Y. Aug. 29, 2012) (quoting Iqbal, 556 U.S. at 678). A complaint "cannot withstand a motion to dismiss unless it contains factual allegations sufficient to raise a 'right to relief above the speculative level.'" Blackson, 2014 WL 6772256, at *2 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a

---

[6] Reed did not receive permission to file either of his sur-replies. "Nevertheless, mindful of its duty to extend special solicitude to pro se plaintiffs, the Court has exercised its discretion to accept and consider the sur-repl[ies]." Dash v. Bank of Am. Corp., No. 18 Civ. 4807 (RWL), 2019 WL 1780140, at *3 n.9 (S.D.N.Y. Apr. 23, 2019) (citing Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *1 (S.D.N.Y. Apr. 30, 2013)).

cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to 'raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).  Courts must undertake to "ensure that inexperienced pro se litigants do not inadvertently forfeit rights or winning arguments," Tartt v. City of New York, No. 12 Civ. 5405 (VEC), 2014 WL 3702594, at *2 (S.D.N.Y. July 16, 2014), and therefore apply "a more flexible standard to evaluate the[] sufficiency [of their complaints] than . . . when reviewing a complaint submitted by counsel." Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 140 (2d Cir. 2000) (internal citation omitted); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

In assessing the Motion, the Court considers "the allegations contained within the four corners" of the Petition, Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), as well as factual allegations contained in Reed's other court filings, see Rodriguez v. Rodriguez, No. 10 Civ. 891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013); Torrico v. IBM, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002), and takes judicial notice of public records that are referenced in and "integral to" the Petition. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  Despite these considerations, Reed "is not relieved of the minimum pleading requirements." Torain v. Casey, No. 16 Civ. 2682 (VEC) (JCF), 2016 WL 6780078, at *3 (S.D.N.Y. Sept. 16, 2016).

**B.  Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave is typically granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).

The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."  Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000).  Courts in this District have held that a court should deny a motion to amend where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party."  Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent that finds proper grounds for denying a motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment")) (citing Foman, 371 U.S.at 182).

## IV. DISCUSSION

### A. Agreement to Arbitrate

#### 1. Legal standard

Arbitration "is a consensual arrangement meant to reflect a mutual agreement to resolve disputes outside of the courtroom." InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG, 373 F. Supp. 2d 340, 358 (S.D.N.Y. 2005) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.")).  There is no presumption in favor of arbitration when parties dispute "not the scope of an arbitration clause, but whether an obligation to arbitrate exists[.]"  Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011).  Federal courts have long recognized that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed to so submit.'"  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)); see Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (per curiam).  "[I]n deciding whether a contractual obligation to arbitrate exists, 'courts should generally apply state-law principles that govern the formation of contracts.'"  Applied Energetics, 645 F.3d at 526 (quoting Mehler v. Terminix Int'l Co., 205 F.3d 44, 48 (2d Cir. 2000)).

"Under New York law, 'courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.'"  Arnaud v. Drs. Assocs. Inc., 821 F. Appx. 54, 56 (2d Cir. 2020) (quoting Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589

(1999)).  In New York, "silence as acceptance generally arises only when the effect of silence is to mislead the other party[.]"  Karlin v. Avis, 457 F.2d 57, 61–62 (2d Cir. 1972) (citing Tanenbaum Textile Co. v. Schlanger, 287 N.Y. 400, 404 (1942)).  In determining whether a contract has been formed, "[a]n offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer[.]"  Karlin, 457 F.2d at 62 (citing Albrecht Chem. Co. v. Anderson Trading Corp., 298 N.Y. 437 (1949)); see Landmark Ins. Co. v. Hensam Enters. Inc., No. 10 Civ. 4450 (GBD), 2011 WL 3366483 at *6–7 (S.D.N.Y. July 29, 2011) (citing Albrecht and granting motion to dismiss where defendant's failure to respond to plaintiff's letter did not modify its contractual rights); cf. Manigualt v. Macy's East, LLC, 318 F. App'x 6, 7–8 (2d Cir. 2009) (holding that plaintiff consented to arbitrate grievances by continuing her employment after receiving notice of employer's dispute resolution program and failing to opt out).

A petition to confirm an arbitration award must comply with the Federal Arbitration Act, 9 U.S.C. § 13(a) ("FAA").  See Alpaca Shop Franchise Co. v. Roxburgh, No. 3:05-CV-1203 (SRU), 2010 WL 2976918, at *2 n.2 (D. Conn. July 22, 2010) (confirming award and explaining that, under the FAA, "[t]he party moving for an order confirming an arbitration award must file particular papers with the clerk for the entry of judgment thereon[]"); see also Bozek v. PNC Bank, No. 20-CV-2875 (JMY), 2020 WL 6581491 at *3 (E.D. Pa. Nov. 10, 2020) (dismissing with prejudice plaintiff's petition to confirm an arbitration award and granting defendants' motion to vacate). Under the FAA,

> The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file . . .
>
> (a)    The [arbitration] agreement . . .
> (b)    The award[;] [and]

> (c)     Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

9 U.S.C. 13(a)–(c); see also Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007) (noting that "the requirement of a written arbitration agreement is pervasive in the FAA," citing, among other provisions, 9 U.S.C. § 13).

### 2. The parties' arguments

#### a. RMBS

RMBS argues the Petition is defective because Reed relies on "sham documents to create the appearance of an arbitration agreement, where no such agreement exists." (ECF No. 19 at 1; see also ECF Nos. 30, 32). RMBS maintains that the parties never agreed to arbitrate any disputes, and it never consented to arbitration, whether through a signed contract, statements or by its conduct. (ECF Nos. 19 at 6, 30 at 3). RMBS argues that the letters Reed purportedly sent had no legal effect, because "[s]ilence may not be translated into acceptance merely because the offer purports to attach that effect to it." (ECF No. 19 at 10) (citing Tanenbaum, 287 N.Y. at 404).

Second, RMBS alleges that the Petition does not satisfy the requirements of the FAA. (ECF No. 19 at 8). The Petition is noncompliant, RMBS asserts, because it does not include the arbitration agreement—a defect that cannot be cured because no agreement exists—and because Reed failed to attach the notices sent to RMBS concerning arbitration, in particular the Demand Letter and the Notice of Dishonor and Opportunity to Cure. (Id. at 5, 8–9).

#### b. Reed

Reed's Opposition largely focuses on the background between the parties and his claim that the Deed of Trust is fraudulent. (See ECF No. 29). In addition, Reed asserts generally that

the Petition satisfies the FAA and that RMBS had notice of the Hearing and chose not to participate. (Id. at 8–10). He also asserts that he attached proof of service of the "[a]rbitration correspondence," citing to the documents attached to the Petition as Exhibits "A" through "H." (Id. at 8). These documents (listed comprehensively supra at II.A) do not include the Demand Letter or Notice of Dishonor and Opportunity to Cure, but include a certified mail receipt to RMBS dated October 25, 2019 (and a second with an illegible date), the Final Notice, the Hearing Notice, and a USPS tracking record dated December 12, 2019 signed by "R Rob." (ECF No. 1 at 12–51). In his First Sur-Reply, he adds that "there was an agreement for [a]rbitration which [RMBS] consented to by failure to object to the agreement." (ECF No. 31 at 3). In Reed's Second Sur-Reply, he reiterates that RMBS had notice of the arbitration hearing, received written notice of the Award in 2019, and attaches a Proof of Service of the First Award dated December 10, 2019.[7] (ECF No. 33 at 2, 5).

### 3. Application

The Court finds that Reed has not shown that RMBS agreed to arbitrate, and the Petition fails to satisfy the requirements of the FAA.

First, Reed does not allege facts giving rise to an agreement to arbitrate. To the contrary, Reed alleges only that "[RMBS] consented to [agree to arbitrate] by fail[ing] to object to the agreement." (ECF No. 31 at 3). This "tacit acquiescence argument based on [RMBS's] failure to respond to the Demand Letter [containing the purported arbitration clause] and various

---

[7] Reed also refiled the October 25, 2019 certified mail receipt filed with his Petition. (ECF Nos. 33 at 4; 1 at 41).

correspondences is completely unpersuasive." Bozek, 2020 WL 6581491, at *3 (citing Kalmowitz v. Fed. Home Mortg. Corp., No. 19-MC-00010, 2019 WL 6249298 at *3 (E.D. Tx. Oct. 22, 2019)).

Reed cannot "transform [RMBS's] silence into acceptance when [RMBS] does not intend to accept the offer[.]" Karlin, 457 F.2d at 62; see King v. Trump, No. 20 Civ. 9268 (CM), 2020 WL 7248820, at *2–3 (S.D.N.Y. Dec. 8, 2020) (citing Meekins and dismissing petition to confirm arbitration award); Meekins v. Lakeview Loan Srvs. LLC, No. 3:19-cv-501 (DJN), 2019 WL 7340300, at *2–3 (E.D. Va. Dec. 30, 2019) (declining to confirm an arbitration award where the record failed to demonstrate a "scintilla of mutual assent," and "hornbook contract law" established that failure to respond to petitioner's demand did not create an agreement to arbitrate); Albrecht, 298 N.Y. at 440–41 (finding no agreement to arbitrate was formed where seller did not accept buyer's offer form containing an arbitration clause, and instead forwarded its own independent memoranda of sale); Tanenbaum, 287 N.Y. at 404 (holding that invoices given by a seller to a buyer providing that all controversies were to be settled by arbitration did not satisfy a statutory requirement that arbitration agreements be in writing). Reed here fails to allege facts giving rise to an "objective meeting of the minds," Arnaud, 821 F. App'x at 56 (internal quotation marks and citations omitted), or allege facts from which RMBS's silence had the effect of misleading him, see Karlin, 457 F.2d at 61–62 (citing Tanenbaum, 287 N.Y. at 404). Reed has not demonstrated a single affirmative act by RMBS that could manifest the consent required to create an agreement to arbitrate. Accordingly, Reed has failed to demonstrate that an agreement to arbitrate existed.

Second, the Petition does not comply with the FAA because Reed does not attach to the Petition a copy of the arbitration agreement. 9 U.S.C. § 13(a); see Alpaca, 2010 WL 2976918, at *2, n.2; Bozek, 2020 WL 6581491, at *3; Meekins, 2019 WL 7340300, at *2–3; Kahapea v.

Pennymac Loan Servs., LLC, No. 1:19-mc-00028 (MV), 2020 WL 128310, at *1–2 (D.N.M. Jan. 10, 2020) (finding that the court did not have jurisdiction to confirm an arbitration award where the arbitration agreement was not filed); Teverbaugh v. Lima One Capital, LLC, No. 2:19-mc-159 (KS) (MTP), 2020 WL 448259, at *2 (S.D. Miss. Jan. 28, 2020) ("Without an underlying valid arbitration agreement, the [c]ourt is unable to conclude that confirmation is proper."); see also United Cmty. Bank v. Arruarana, No. 1:10-cv-248 (MR), 2011 WL 2748722, at *2 (W.D.N.C. July 13, 2011) ("Without the filings required by [9 U.S.C.] § 13, the [c]ourt is unable to conclude . . . that a valid arbitration agreement and award exist . . ."). That RMBS has pointed out, in the Motion, this defect, and Reed has neither described the agreement with any detail nor attached it to any of his filings, and reiterated that "there was an agreement for [a]rbitration which [RMBS] consented to by fail[ing] to object" (ECF No. 31 at 3) give rise to the strong inference that no arbitration agreement exists. See ECF Nos. 19 at 8–11; 29, 31, 33.

The facts in this case are strikingly similar to those in Bozek, a case that proceeded in the Eastern District of Pennsylvania. Like the Petition, Bozek stemmed from "lengthy litigation dating back to a mortgage foreclosure action[.]" 2020 WL 6581491, at *1. Bozek sent a letter to the defendants in that case, one of which was a bank, containing a purported arbitration clause, and claimed that an arbitration had occurred before the same Panel as this action. See id.; ECF No. 1 at 13, 23. Bozek claimed that the Panel issued an arbitration award of approximately $3.4 million, which increased to approximately $10.3 million with treble damages. 2020 WL 6581491, at *1.

The court granted defendants' motion to dismiss and vacate the petition. The court rejected Bozek's "tacit acquiescence" allegations, and held that the petition, which did not include an arbitration agreement, failed to comply with the FAA. 2020 WL 6581491, at *2–3. As

here, the court found that "mutual assent"—that any agreement was "actually negotiated" with defendants or that defendants accepted the terms of the agreement—was absent. Id. at 4.[8]

The Court finds this analysis of whether an agreement to arbitrate existed persuasive, given the significant factual similarities to the events set forth in the Petition. As in Bozek, the Court finds that the parties did not have an agreement to arbitrate, and, as described below, amendment of the Petition would be futile.

### 4. Leave to amend

Although Reed requests leave to amend to rectify these defects in his Petition (ECF No. 29 at 1), amendment is not warranted here on grounds of futility. Reed was on notice, from the arguments in RMBS's Motion, of the two potential defects in his Petition. In three subsequent filings—the Opposition, the First Sur-Reply, and the Second Sur-Reply—he held fast to the assertion that RMBS's non-response to the Demand Letter and Notice of Dishonor and Opportunity to Cure manifested an agreement to arbitrate, but did not provide any additional documentary proof that such an agreement existed. Under these circumstances, a further opportunity to amend is not warranted. See Chasman v. JP Morgan Chase Bank, NA, No. 18 Civ. 6681 (NRB), 2020 WL 207784, at *4 (S.D.N.Y. Jan. 14, 2020) (denying leave to amend that would "constitute plaintiffs' fourth bite of the proverbial apple, which is impermissible."). Accordingly, because amendment would be futile, I respectfully recommend that leave to amend be denied. See King, 2020 WL 7248820, at *2–3 (dismissing action to confirm an arbitration award with prejudice, where the award was issued by "an organization that many courts have described as invalid[]" and employed a procedure of "sending Respondents an incomprehensible agreement

---

[8] Bozek's appeal is pending before the Third Circuit. See Bozek v. PNC Bank, No. 20-3515 (3d Cir.).

to arbitrate and using their non-response to initiate an arbitration") (citing <u>Meekins</u>, 2019 WL 7340300, at *3).

### B. Vacatur of the Arbitration Award

#### 1. Legal standard

Under the FAA, "challenges to an arbitration award 'upon the application of any party to the arbitration,' are limited to the following grounds:

> (1)      where the award was procured by corruption, fraud, or undue means;
> (2)      where there was evident partiality or corruption in the arbitrators, or either of them;
> (3)      where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4)      where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

<u>Rich v. Spartis</u>, 516 F.3d 75, 81–82 (S.D.N.Y. 2008) (quoting 9 U.S.C. § 10(a)).   "[I]f arbitrators 'rule[] on issues not presented to [them] by the parties, [they have] exceeded [their] authority and the award must be vacated.'"  <u>Fahnestock & Co., v. Waltman</u>, 935 F.2d 512, 515 (2d Cir. 1991) (confirming compensatory arbitration award which was confined to the issues presented by the parties, but vacating punitive damages as arbitrators lacked the authority to award punitive damages under New York law) (quoting <u>Dighello v. Busconi</u>, 673 F. Supp. 85, 87 (D. Conn. 1987), <u>aff'd mem.</u>, 849 F.2d 1467 (2d Cir. 1988)).   "[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission . . . [which] serves not only to define, but to circumscribe, the authority of arbitrators."  <u>Ottley v. Schwartzberg</u>, 819 F.2d 373, 376 (2d Cir. 1987) (quoting 6 C.J.S. <u>Arbitration</u> § 69, at 280–81 (1975)).   "An inquiry under [9 U.S.C.] § 10(a)(4) asks 'whether

the [a]rbitrators had the power, based on the . . . arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" Nat'l Union Fire Ins. Co. v. Dana Corp., No. 05 Civ. 253 (DC), 2005 WL 857352, at *4 (S.D.N.Y. Apr. 12, 2005) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir. 2002)). The Second Circuit has described the court's task as "determin[ing] . . . whether the arbitral award is merely the 'arbitrator[s'] own brand of justice.'" Banco de Seguros del Estado v. Mutual Marine Office Inc., 344 F.3d 255, 262 (2d Cir. 2003) (quoting Local 1199 v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992)). Under the FAA, a motion to vacate an arbitration award must be served within three months after the award is filed or delivered. 9 U.S.C. § 12. This three-month period "is a statute of limitations and the failure to bring a timely motion is an absolute bar to an application seeking vacatur or modification." Hamilton v. Navient Sols., LLC, No. 18 Civ. 5432 (PAC), 2019 WL 633066, at *4 (S.D.N.Y. Feb. 14, 2019) (denying motion to vacate as time-barred where service was completed "one day after a deadline for which there are no exceptions") (internal citation omitted).[9] "'The Second Circuit has made clear that there is no exception to this three[-]month limitation period.'" M.J. Woods, Inc. v. Conopco, Inc., 271 F. Supp. 2d 576, 582 (S.D.N.Y. 2003) (quoting Kruse v. Sands Brothers & Co., 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002)).

---

[9] The Ninth Circuit determined, as an issue of first impression, that the doctrine of equitable tolling applies to the FAA "in limited circumstances . . . [to] enhance both the accuracy and fairness of arbitral outcomes." Move, Inc. v. Citigroup Global Mkts., Inc., 840 F.3d 1152, 1158 (9th Cir. 2016) (finding, under a "unique set of facts," that the district court erred in denying motion to vacate filed four years after statutory window where arbitral misconduct deprived party of the right to a fundamentally fair hearing and the party "acted with due diligence in pursuing its claim"). The Second Circuit has not "reach[ed] the question of whether there are any exceptions to the rule of strict compliance with the FAA's three-month deadline[.]" Milberg, LLP v. Drawrah Ltd., 844 F. App'x 397, 400 (2d Cir. Feb. 9, 2021) (summary order) (upholding dismissal of petition to vacate arbitration award as untimely, and ruling out a "possible equitable extension" in light of the party's lack of diligence within the FAA's statutory period).

### 1. RMBS's arguments

RMBS argues that the Award should be vacated under the FAA because it was fraudulent on its face and the arbitrators exceeded their power in rendering the Award without an enforceable agreement to arbitrate. (ECF No. 19 at 11–12 (citing 9 U.S.C. 10(a)(1), (4)).  It notes that Dalwickman "has specifically been found to be involved in a fraudulent scheme to enter invalid and unenforceable arbitration awards[,]" and cites to Bozek and Ford Motor Credit Company v. Rocha, No. 4:20-cv-00346-O, 2020 WL 4718066 (N.D. Texas June 17, 2020), both of which invalidated arbitration awards issued by Dalwickman. (Id. at 11, 13–16).  RMBS also argues that the imposition of $11.4 million in punitive damages exceeded the arbitrators' authority because New York law "categorically prohibits the imposition of punitive damages by an arbitrator." (Id. at 16 (citing Fahnestock, 935 F.2d at 519).

RMBS contends that its Motion, in seeking to vacate the Award, is timely under the FAA, which "requires that notice of a motion to vacate an arbitration award must be served 'within three months after the award is filed or delivered.'" (ECF No. 32 at 4 (quoting 10 U.S.C. § 12)). Here, RMBS argues, Reed did not allege "when or how RMBS supposedly received that award," and the Motion was filed just over one month (35 days total) after RMBS was properly served in this action. (Id. at 4–5).  In the alternative, RMBS argues that the three-month deadline should be equitably tolled. (Id. at 5–6).  Finally, RMBS argues that venue is proper because parties may file "post-arbitration motions in any district that has subject matter and personal jurisdiction." (Id. at 8 (citing Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 196–97 (2000)).

### 2. Reed's arguments

Reed opposes vacatur of the Award as untimely under the FAA, because the Motion was filed more than three months after the Award. (ECF No. 31 at 3–4 (citing 9 U.S.C. § 12)). Reed also argues that although the Motion is predicated in part on purported fraud, RMBS "do[es] not list any elements of fraud in this case." (Id. at 4).

### 3. Application

Even if the Dalwickman arbitrators exceeded their authority in issuing the Award in the absence of an agreement to arbitrate, the Court finds that the FAA's strict three-month statute of limitations bars RMBS's untimely request for vacatur of the Award.

As addressed supra at IV.A.3–4, here there was no agreement by the parties to be bound by arbitration. Accordingly, "the arbiter[s] necessarily 'exceed[ed] [their] powers'" in issuing the Award, which provides a basis for the Court to vacate the Award under 9 U.S.C. § 10(a). Bozek, 2020 WL 6581491, at *5 (quoting 9 U.S.C. § 10(a)(4)); see also Meekins, 2019 WL 7340300, at *3 (vacating arbitration award as procured by "fraud, corruption, or undue means" where petitioner predicated agreement to arbitrate on respondents' failure to respond, "rather than any affirmative act of acceptance."). Nevertheless, RMBS did not move to vacate the Award until November 25, 2020 (ECF Nos. 16, 32 at 5)—well outside of the three-month statute of limitations, which operates as an "absolute bar" to the application seeking vacatur. Hamilton, 2019 WL 633066, at *4.[10]

---

[10] The Proof of Service on RMBS of the "Final Arbitration Award"—and it not clear whether this is the First Award or the Modified Award—is dated December 10, 2019. (ECF No. 33 at 5).

The court in Bozek vacated the arbitration award under 9 U.S.C. § 10(a)(4).  2020 WL 6581491, at *5.  In doing so, it rejected Plaintiff's argument that the motion was untimely, being made outside of 90 days of the date by which the defendants purportedly received notice of the arbitration award, "because no agreement to resolve disputes through arbitration exists." Id. at *4.  Therefore, because there was no "underlying agreement," the Court was "under no obligation to provide any deference to the purported arbitrator." Id. at *5 (citing 9 U.S.C. §§ 2, 10).  Given the absence of an arbitration agreement, vacatur of the purported arbitration award was warranted under the FAA because the "arbiter necessarily 'exceed[ed] [his] powers' because he lack[ed] any power to bind the parties by arbitration." Id.

The Court declines to follow Bozek in this regard given the strong command from the Second Circuit that "there is no exception" to the three-month statute of limitations set by the FAA.  Kruse, 226 F. Supp. 2d at 486.  Further, as in Milberg, RMBS has not demonstrated diligence within the three-month service period to warrant the equitable extension that it seeks.  844 F. App'x at 400.  Accordingly, the Court respectfully recommends that RMBS's request for vacatur of the Award be DENIED as untimely.

### V.CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the Motion be GRANTED IN PART AND DENIED IN PART as follows:

(1) the Petition be DISMISSED WITH PREJUDICE; and

(2) RMBS's request to vacate the Petition be DENIED as untimely.

The Court respectfully directs the Clerk of Court to mail a copy of this Report and Recommendation to Petitioner pro se John K. Reed at the address below.

21

Dated:      New York, New York
            July 12, 2021

_____
SARAH L. CAVE
United States Magistrate Judge

Mail To:     John K. Reed
            1611 Olive Street
            Santa Barbara, California 93101

*                *                *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  If Reed does not have access to cases cited

in this Report and Recommendation that are reported on Westlaw, he may request copies from

RMBS's counsel.  <u>See</u> Local Civ. R. 7.2.